IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PEARL PETROLEUM COMPANY
LIMITED, DANA GAS PJSC, and
CRESCENT PETROLEUM COMPANY
INTERNATIONAL LTD,

                Petitioners,

    v.

THE KURDISTAN REGIONAL
GOVERNMENT OF IRAQ,

                Respondent.

Civil Action No. _____

PETITION TO CONFIRM
FOREIGN ARBITRAL AWARD

Petitioners Pearl Petroleum Company Limited ("**Pearl**"), Dana Gas PJSC ("**Dana**"), and

Crescent Petroleum Company, International Ltd ("**Crescent**", and collectively with Pearl and

Dana, the "**Petitioners**"), by their undersigned attorneys, allege as follows:

## INTRODUCTION

1.    This is an action for recognition and enforcement of a foreign arbitral award pursuant to

the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517,

T.I.A.A. 6997, 330 U.N.T.S. 3 (the "**New York Convention**"), as implemented in Chapter 2 of

the Federal Arbitration Act ("**FAA**"), codified at 9 U.S.C. § 201 *et seq.*

2.    The Petitioners are claimants in an ongoing arbitration against the Kurdistan Regional

Government of Iraq ("**KRG**").  The arbitration is taking place under the Rules of the London Court

of International Arbitration (the "**LCIA**"), and is seated in London, England (the "**Arbitration**").

The Arbitration was instituted pursuant to an arbitration clause contained in an April 4, 2007

contract between Dana and the KRG (the "**Contract**").[1]   A certified copy of  the Contract is annexed hereto as **Exhibit A** and incorporated as if fully set forth herein.

3.      The arbitral tribunal was constituted on January 24, 2014 and consists of Lord Hoffmann (President), Lord Collins of Mapesbury and Mr. John Beechey (collectively, the "**Tribunal**").

4.      The Tribunal has issued three Partial Final Awards: the First Partial Final Award dated June 30, 2015 (the "**First Partial Final Award**"), a Second Partial Final Award dated November 27, 2015, as corrected by the tribunal in a January 20, 2016 Memorandum of Correction (the "**Second Partial Final Award**"), and a Third Partial Final Award dated January 30, 2017, as corrected by the Tribunal in an April 4, 2017 Memorandum of Correction (the "**Third Partial Final Award**").

5.      In this action, Pearl seeks to enforce:

   i)   the Second Partial Final Award, in which the Tribunal ordered the KRG to pay Pearl the sum of US $1,963,370,320.  A certified copy of the Second Partial Final Award is annexed hereto as **Exhibit B** and incorporated as if fully set forth herein.  A certified copy of the Memorandum of Correction of the Second Partial Final Award is annexed hereto to **Exhibit C** and incorporated as if fully set forth herein; and

   ii)  the Third Partial Final Award, in which the Tribunal ordered the KRG to pay Pearl the additional sum of US $121,095,282, interest on the US $121,095,282 award and on the previously awarded amount of US $1,963,370,320, and dismissed all of the KRG's counterclaims.  A certified copy of the Third Partial Final Award is annexed hereto as **Exhibit D** and incorporated as if fully set forth herein.   A certified copy of the

---

1 The Contract is referred to in the Arbitration as the "Heads of Agreement" or "HOA".  The Tribunal confirmed in the First Partial Final Award that it was a binding, enforceable agreement.

Memorandum of Correction of the Third Partial Final Award is annexed hereto as **Exhibit E** and incorporated as if fully set forth herein.

6. Dana and Crescent seek to enforce the Third Partial Final Award in which the Tribunal ordered the KRG to pay Dana and Crescent the sum of US $1,654,000, plus interest.

## THE PARTIES

7. Petitioner Dana Gas PJSC is a company incorporated in Sharjah, United Arab Emirates, with a registered office at P.O. Box 2011, Crescent Tower, Sharjah, United Arab Emirates. Dana is the leading publicly listed natural gas company in the Middle East. Dana initially entered into the Contract with the KRG before assigning 50% of its interests therein to Crescent.

8. Petitioner Crescent Petroleum Company, International Ltd is a company incorporated in Bermuda, with a registered office at P.O. Box 211, Crescent Tower, Sharjah, United Arab Emirates. Crescent is the oldest privately-owned oil and gas company in the Middle East.

9. Petitioner Pearl Petroleum Company Limited is a special purpose entity incorporated in the British Virgin Islands, with a registered office at P.O. Box 5766, Crescent Tower, Sharjah, United Arab Emirates. Pearl was incorporated by Dana and Crescent to hold the benefit of the Contract for the appraisal and development of the Khor Mor and the Chemchemal fields in the Kurdistan Region of the Republic of Iraq. Pearl was originally jointly owned by Crescent and Dana, but is now owned by a consortium of companies, including Crescent and Dana.

10. Respondent The Kurdistan Regional Government of Iraq is the regional government of the Kurdistan Region of Iraq. The Kurdistan Region of Iraq is a constituent region of the Republic of Iraq, having been established as such by the 2005 Iraqi Constitution (Article 117(First)). At all times in the Arbitration, the Respondent has been legally represented by an attorney team from Wilmer Cutler Pickering Hale and Dorr LLP and English barristers from Essex Court Chambers.

3

## JURISDICTION AND VENUE

11.    This action to confirm the Second and Third Partial Final Awards arises under the New York Convention, as codified under the Federal Arbitration Act, and specifically 9 U.S.C. §§ 201, 202 and 207.  This Court has original jurisdiction over the subject matter of this action pursuant to 9 U.S.C. §§ 203 and 207, and 28 U.S.C. § 1331.

12.    The Second and Third Partial Final Awards are governed by the New York Convention because: (i) the awards arose from a commercial legal relationship between the parties; (ii) there was an agreement in writing to arbitrate any disputes arising from that relationship; (iii) the seat of the Arbitration was London, England, a signatory to the New York Convention; and (iv) at least one of the parties is not an American citizen.  *See* 9 U.S.C. § 202; *Invista N. Am. S.À.R.L. v. Rhodia Polyamide Intermediates S.A.S.*, 503 F. Supp. 2d 195, 201 (D.D.C. 2007) (listing the requirements for an award to fall under the New York Convention).

13.    In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a) because the Respondent is the regional government of the Kurdistan Region of Iraq, a constituent region of the Republic of Iraq, and, therefore, a political subdivision of a foreign state.  *See* 28 U.S.C. § 1603(a); *Ministry of Oil of Republic of Iraq v. 1,032,212 Barrels of Crude Oil Aboard United Kalavrvta*, CIV.A. G-14-249, 2015 WL 93900, at *281 (S.D. Tex. Jan. 7, 2015) (noting that "Kurdistan is a political subdivision of Iraq.")

14.    Pursuant to 28 U.S.C. § 1605(a)(1), the KRG is not entitled to sovereign immunity because it explicitly waived its immunity under the Contract.  In relevant part, Annexure 2 of the Contract states that "the KRG waives on its own behalf and that of the KRG [sic] any claim to immunity for itself and assets."  (Exhibit A at pg. 12).  The KRG has therefore waived sovereign immunity as to this proceeding, which seeks to enforce arbitration awards rendered with respect to the KRG's obligations under the Contract.

15.     The KRG is also not entitled to immunity because this is an action under 28 U.S.C. § 1605(a) to enforce an arbitral award that is governed by a treaty (the New York Convention) to which the United States is a party.

16.     This Court has personal jurisdiction over the KRG pursuant to 28 U.S.C. § 1330(b), which provides that personal jurisdiction over a foreign state shall exist as to every claim for relief as to which the district court has jurisdiction under 28 U.S.C. § 1330(a), a requirement that is satisfied here, and where service has been made pursuant to 28 U.S.C. § 1608.

17.     In addition, the KRG has consented to this Court's exercise of jurisdiction by having agreed in Article 16(e) of the Contract that "[t]he arbitral award . . . may be enforced by any court of competent jurisdiction, including the Kurdistan Region."  Given that this Court has the authority to enforce the Second Partial Final Award and the Third Partial Final Award pursuant to the New York Convention, it is a court of competent jurisdiction under Article 16(e) of the Contract and, thus, the KRG has consented to its jurisdiction for the purpose of enforcement.

18.     Venue is proper in this Court pursuant to 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4).

## FACTUAL BACKGROUND

19.     The facts leading up to the dispute between the parties are summarized below and in paragraphs 65 to 90 of the First Partial Final Award, a certified copy of which is attached hereto as **Exhibit F**.

20.     On April 4, 2007, Dana and the KRG entered into the Contract.  (*See* Exhibit A.).  On October 17, 2007, Dana assigned 50% of its interest under the Contract to Crescent, and, on February 5, 2009, Dana and Crescent each assigned their respective interests in the Contract to Pearl.

21.     Under the Contract, the Petitioners were granted, *inter alia:* (i) long term[2], exclusive rights to develop and produce "Petroleum"[3] within both the Khor Mor and Chemchemal fields; (ii) title to and the right to market and sell, including by way of export (if possible), the byproducts of all gas production, namely the Liquid Petroleum Products.  The Petitioners were obliged to pay for and construct gas production facilities to supply, free of charge, a certain quantity of gas to two power plants in the Kurdistan Region of Iraq (the "**Power Plants**").  The Petitioners were also granted title to and the right to market and sell all "excess gas" (*i.e.*, gas in excess of that required to be supplied to the Power Plants).

22.     Income from the sale of the Liquid Petroleum Products was to be applied in the following order: first, to provide the Petitioners with a minimum remuneration fee; second, to reimburse the Petitioners' costs for producing Petroleum; third, to an agreed rate of return on the Petroleum costs; and fourth, for the account of the KRG.  To date, and despite fulfilling all their contractual obligations, the Petitioners have yet to recover their Petroleum costs, let alone make any return on their investment.

23.     In addition to its general right to market, sell and export Liquid Petroleum Products directly, if export were prevented for governmental or political reasons, the Petitioners had the right to require the KRG to purchase Liquid Petroleum Products at a guaranteed price.  This additional protection is set forth in Annexure 2 to the Contract, which provides as follows:  "In the event Dana is unable to export and market the LPG's, Condensates by any act or omission of government (including foreign neighboring governments) and/or for political reasons beyond the control [of] Dana then the KRG shall purchase and lift (or arrange for the lifting by the domestic

---

[2]  The term of the Contract was for at least 25 years.  Annexure 6A of the Contract § 4.2.  Annexure 6A is attached hereto as **Exhibit G**.

[3]  A term defined in the Contract to refer to all "all naturally occurring hydrocarbons".  Exhibit G § 1.2.

companies/users) and pay for the liquid Petroleum at international FOB Med market prices as quoted by Platts Oilgram Report or similar journals within 30 days from the month ends." (Exhibit A, Annexure 2, at pg. 10).

24.     Gas began to be delivered to the Power Plants in October 2008, at which point the production of condensate also began (production of LPG started in 2011).  Due to an ongoing dispute between the KRG and the Federal Government of Iraq over, *inter alia*, the KRG's right to manage hydrocarbons within the Kurdistan Region, the Petitioners were unable to export any Liquid Petroleum Products (which remains the case to this day).  Accordingly, shortly before the production of condensate began, the Petitioners requested the KRG to purchase and lift such condensate and, as per the Contract, to pay for these products at international market prices.  From that point onwards, except for discrete periods during which the KRG permitted the Petitioners to make local sales, the Petitioners have been making all of their sales of condensate (and, starting in 2011, LPG) to the KRG or in accordance with the KRG's instructions.

25.     In a blatant breach of its contractual obligations, except for the Petitioners' first invoice (which the KRG settled in full), the KRG made only sporadic payments for the Liquid Petroleum Products, and when it paid, it did so for only about 70% of the outstanding invoiced amounts.

26.     In May 2009, Crescent and Dana each sold a minority part of their respective shareholdings in Pearl to two major European energy companies.[4]  The KRG subsequently made an illegitimate demand for part of the consideration received by Crescent and Dana from these transactions and when Crescent and Dana refused, the KRG blocked their performance under the Contract and denied their rights thereunder.  While the Contract provided for "full scale development" of both the Khor Mor and Chemchemal fields, after May 2009, the KRG confined the Petitioners'

---

[4]  Each of OMV Upstream International GmbH and MOL Hungarian Oil and Gas Public Limited Company acquired a 10% interest in Pearl.

activities to the limited initial services at Khor Mor, physically evicting the Petitioners' employees

at gunpoint from Chemchemal and preventing them from completing the appraisal work at either

field, which was a necessary precursor to full scale development.  Despite the KRG's breaches,

the Petitioners have continued to perform their obligations under the Contract to the extent not

obstructed by the KRG by supplying free gas from Khor Mor to the Power Plants and producing

the associated Liquid Petroleum Products.

## THE PARTIES AGREED TO ARBITRATE ALL DISPUTES

27.     Under the dispute resolution clause of the Contract, "[i]f [a] Dispute cannot be resolved by

negotiation within sixty (60) days after the date of the receipt by each party to the Dispute of the

Notice of Dispute[,] any party to the Dispute may seek settlement of the dispute by mediation in

accordance with the [LCIA] Mediation Procedure."  (Exhibit A § 16).  The Contract defines

"Dispute" to mean "any dispute, controversy or claim (of any and every kind or type, whether

based on contract, tort, statute, regulation or otherwise) arising out of, relating to, or connected

with [the Contract] . . ." (*Id.*).  The Contract further provides that in the event that a "Dispute" is

not resolved through mediation, either party could refer it to LCIA arbitration.  Article 16 of the

Contract states:

(a)     If the Dispute is not settled by mediation within sixty (60) days of the appointment of the mediator, or such further period as the Parties to the Dispute may otherwise agree in writing, any party to the Dispute may refer the Dispute to, and seek final resolution by, arbitration under the LCIA Rules, which Rules shall be deemed to be incorporated by reference into this Article.

(b)     Any arbitration shall be conducted by three (3) arbitrators.

(c)     The KRG and Dana shall each nominate one (1) arbitrator.

(d)     In any event, the two arbitrators so nominated shall, in good faith, use all reasonable endeavours to agree on the nomination of the third arbitrator, who will chair the arbitral tribunal.  In case of failure to appoint an arbitrator or to agree on the appointment of the third

arbitrator, Rules of the LCIA shall apply.

(e)     Arbitration shall take place in London, England.  The language to be used in any prior negotiation, mediation and in the arbitration shall be English.  During the arbitration procedure and until the arbitral decision, neither entity shall act in a manner that may affect the rights of the other Party under these [Head of Agreement]/Service Agreement.  The arbitral award may include an award of specific performance and may be enforced by any court of competent jurisdiction, including the Kurdistan Region.  Any award shall be expressed in US  Dollars.

(f)     The Parties agree that the arbitral award shall be final and not subject to any appeal.

*Id.*

28.     The Contract further provides that "[t]he [Contract]/Service Agreement . . ., including any Dispute arising in relation thereto, shall be governed by English law (except any rule of English Law which would refer the matter to another jurisdiction), together with any relevant rules, customs and practices of international law, as well as by principles and practice generally accepted in the international petroleum industry."  (Exhibit A § 15).

## THE LCIA ARBITRATION

29.     Pursuant to Article 16 of the Contract, the Petitioners submitted their dispute with the KRG to LCIA mediation, but the KRG ignored the mediation process.  On the final business day of the mediation period, the KRG's counsel wrote to confirm that the KRG "declined" to participate in the mediation.

30.     Left with no choice, following the expiration of the mediation period, on October 21, 2013, the Petitioners filed a Request for Arbitration with the LCIA, nominating Mr. Beechey as arbitrator.  On November 20, 2013, the KRG submitted a Response and Counterclaim and nominated Lord Collins of Mapesbury as arbitrator.  Mr Beechey and Lord Collins nominated Lord Hoffmann as presiding arbitrator and, on January 27, 2014, the Tribunal was constituted.

## A.      The Interim Order

31.      In response to the Petitioners' invocation of the dispute resolution procedures in the Contract and in a flagrant disregard for its contractual obligations, in July 2013 the KRG stopped making any payments whatsoever for Liquid Petroleum Products sold and delivered to it under the Contract.  Given that the Petitioners had substantial monthly running costs at the Khor Mor facility, the sudden cessation of all income caused serious financial difficulties and, on March 2, 2014, the Petitioners applied to the Tribunal for interlocutory relief in the form of an order that the KRG resume paying for Liquid Petroleum Products pending the outcome of the Arbitration.

32.      On July 10, 2014, the Tribunal issued an interim order requiring the KRG to continue making payments for Liquid Petroleum Products at 70% of the applicable international price.  The KRG refused to comply with this interim order.  On October 17, 2014, the Tribunal made a peremptory order[5] that the KRG pay the Petitioners the sum of US $100 million, to be set off against its liability under the Tribunal's order from July 10, 2014.  The KRG did not comply with the Tribunal's peremptory order, thus forcing the Petitioners to make an application to the English High Court under Section 42 of the 1996 English Arbitration Act.  On November 20, 2015, the English High Court ordered enforcement of the Tribunal's peremptory order, and ordered the KRG to pay the Petitioners the sum of US $100 million within 14 days (subsequently extended by court order to February 26, 2016).  In making this order, the High Court also dismissed the KRG's claim to sovereign immunity.

---

[5]  A peremptory order is "a final order or direction of the tribunal, which specifies a time for compliance.  A peremptory order is usually made following failure by one or more parties to adhere to the tribunal's procedural orders, and may take the form of an 'unless' order.  Peremptory orders are recognized in English law in sections 41(5) and 82 of the Arbitration Act 1996."  Thompson Reuters Practical Law, Glossary: Peremptory Order.

**B.     The First Partial Final Award[6]**

33.     On February 17, 2015, the Tribunal issued a final list of preliminary issues arising from

the parties' pleadings, to be tried at a five-day hearing commencing on April 20, 2015.  Among

those issues, which are set out in full at Appendix A to the First Partial Final Award, were:  (1)

whether, and if so for what period or periods, the Petitioners were unable to export Liquid

Petroleum Products due to any act or omission of government (including foreign neighboring

governments) and/or because of political reasons beyond their control; and (2) what was the

meaning of "an international FOB Med market prices as quoted by Platts Oilgram Report."

34.     On June 30, 2015, the Tribunal issued its First Partial Final Award.  In the First Partial

Final Award, the Tribunal declared the parties' rights and obligations under the Contract and made

a number of factual findings regarding their performance.

35.     Among other things, the Tribunal accepted the Petitioners' claim that, at all material times,

they had been unable to export Liquid Petroleum Products due to political reasons beyond their

control.  As a result, the Tribunal concluded that the provisions of the Contract requiring the KRG

to purchase and lift the Liquid Petroleum Products at international market prices had been

triggered.

36.     The Tribunal also agreed with the Petitioners' interpretation of the "FOB Med market

prices" language in the Contract for the purpose of calculating the KRG's purchase price for Liquid

Petroleum Products.

37.     In addition, the Tribunal found that Dana and Crescent properly assigned the benefit of the

Contract to Pearl.

---

[6]  The determinations and the findings of the Tribunal in the First Partial Final Award are incorporated in, and serve
as the basis of the Tribunal's damages award in favor of Pearl against the KRG in the Second Partial Final Award
and Third Partial Final Award.  By itself, the First Partial Final Award does not contain any award of monetary
damages.

**C.      The Second Partial Final Award**

38.      In light of the First Partial Final Award, on July 20, 2015, the Petitioners applied to the Tribunal for an award to determine the amounts which the KRG owed them in respect of Liquid Petroleum Products up to June 30, 2015 *(i.e.* the date of the First Partial Final Award).

39.      On November 27, 2015, after a hearing on September 21, 2015, the Tribunal issued its Second Partial Final Award, in which the Tribunal found that Pearl is entitled to payment, at the international market price selected under the contract, for the Liquid Petroleum Products lifted by or on behalf of the KRG between 2008 and June 30, 2015, minus (i) amounts that the KRG actually paid, and (ii) certain payments made by third party purchasers.

40.      Based on its findings, the Tribunal ordered the KRG to pay Pearl US $1,981,951,322 within 28 days of the issuance of the Second Partial Final Award." (Exhibit B at ¶ 105(a)).

41.      On January 20, 2016, the Tribunal issued a Memorandum of Correction of the Second Partial Final Award, reducing the amount that the KRG owed Pearl by US $18,581,002.[7]  Thus, the total amount that the KRG owes Pearl under the Second Partial Final Award is US $1,963,370,320.

42.      The KRG has not complied with the Second Partial Final Award in that it has not paid any portion of the US $1,963,370,320 for which it is liable under the award. The KRG has, however, so far paid the sum of US $68,835,472 pursuant to the peremptory order of the Tribunal, as enforced by the High Court in November 2015.  Given that the KRG was ordered to pay that amount as part of an interim measure pending final determination of the Petitioners' claims

---

[7]   As the Tribunal explained in the Memorandum of Correction, in awarding the sum that the KRG owed Pearl, the Tribunal had inadvertently failed to carry into the operative part of the decision a deduction of US $18,581,002 which the Petitioners had received from third parties and in respect of which the Petitioners agreed that the KRG was entitled to credit.  (Exhibit C at ¶ 3.).

and that the Second Partial Final Award has provided precisely such final determination, Pearl has treated this payment as partial satisfaction of the Second Partial Final Award.

43.    On December 22, 2015, the KRG issued an arbitration claim form seeking to set aside the Second Partial Final Award in England, the seat of the Arbitration, under Section 68 of the 1996 English Arbitration Act.[8]   The KRG irrevocably discontinued its set aside claim almost a year later, by notice of discontinuance served on October 20, 2016, one month before the scheduled hearing.  On October 21, 2016, the KRG undertook, in a letter from its attorneys of that date, "neither to assert nor to rely on any of the grounds relied on as the basis of its [section] 68 application in any subsequent proceedings whatever relating to the award, whether in this jurisdiction or anywhere else in the world, and whether in relation to the enforcement of the award or otherwise in relation to the award, without the permission of the English Court."

## D.    The Third Partial Final Award

44.    Following its issuance of the Second Partial Final Award, on August 9, 2016 the Tribunal ordered a further hearing on all remaining questions of (i) the liability of the KRG as to the remaining claims advanced by the Petitioners, (ii) the quantification of damages for any such proven claims, and (iii) the liability of the Petitioners under the counterclaims that the KRG had advanced.

45.    After a 10-day evidentiary hearing, the Tribunal issued the Third Partial Final Award, in which it made a further award in favor of Pearl with respect to Liquid Petroleum Products

---

[8]   Section 68 of the English Arbitration Act 1996 allows a party to an arbitral proceeding to apply to the English Court challenging an award issued in a London-seated arbitration "on the ground of serious irregularity affecting the tribunal, the proceedings or the award".

lifted by or on behalf of the KRG for the period from July 1, 2015[9] until March 31, 2016, in the sum of US $121,095,282[10].

46.     In the Third Partial Final Award, the Tribunal also awarded Pearl contractual interest at LIBOR plus 2%, compounded monthly, on the amounts that the KRG owed it under the Second Partial Final Award and the Third Partial Final Award.  The interest is accruing from the payment due dates for the Liquid Petroleum Products until the time when the KRG satisfies the Second Partial Final Award and the Third Partial Final Award.

47.     In the Third Partial Final Award, the Tribunal also awarded Crescent and Dana the sum of US $1,654,000, plus simple interest at LIBOR plus 2%, in respect of their claim for reimbursement of expenses under a connected agreement called the Strategic Alliance Protocol ("**SAP**").  The dispute under the SAP arose out of, or was related to or connected to the Contract, since the Contract was a preliminary step in the context of the SAP.  As a result, the dispute under SAP fell within the broad definition of Dispute within the Contract, and was thus subject to the arbitration clause contained in Article 16 of the Contract.  The KRG has not disputed the application of the arbitration clause to the SAP dispute.

48.     In its Third Partial Final Award, the Tribunal also dismissed all of the KRG's claims against the Petitioners.

49.     The only remaining items in the Arbitration are for the Tribunal to quantify the amount of damages that should be awarded to Pearl for certain of its additional claims that it has already successfully proven.  The Tribunal needs to determine the amounts owed to Pearl for

---

[9]   While the Third Partial Final Award references June 30, 2015 as the beginning date for the purpose of damages calculation, the Tribunal has corrected that date to July 1, 2015 in its Memorandum of Correction dated April 4, 2017.

[10]   In its Memorandum of Correction dated April 4, 2017, the Tribunal has also clarified that the party entitled to payment for the Liquid Petroleum Products under the Second and Third Partial Final Awards is Pearl.

the KRG's actions that delayed the development of the relevant projects (estimated to be at least US $26.5 billion) and for the KRG's failure to reimburse Pearl for the payment of certain third-party invoices.   In addition, the Tribunal will quantify the amount of the Arbitration costs and legal fees for which the KRG should reimburse the Petitioners until the time of the Second Partial Final Award, as well as determine if the KRG should bear the Petitioners' costs and fees for the later stages of the Arbitration.

## CLAIMS FOR RELIEF
### (9 U.S.C. § 207)

### First Claim for Relief

### (Enforcement of the Second Partial Final Award)

50.     Pearl repeats and realleges each and every allegation contained in paragraphs 1 through 49 above, and incorporates them herein by reference.

51.     The United States is a contracting party to the New York Convention, subject to the reciprocity reservation set forth in Article I of the New York Convention.

52.     The New York Convention has been implemented in the United States by Chapter Two of the Federal Arbitration Act.

53.     The Second Partial Final Award is governed by the New York Convention because it was rendered in the United Kingdom, another contracting party, and satisfies the requirements of Section 202 of the Federal Arbitration Act.  *See* 9 U.S.C. § 202.

54.     The Second Partial Final Award included an award of damages in the amount of US $1,963,370,320 in favor of Pearl against the Respondent.

55.     The Federal Arbitration Act provides that the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207 (emphasis added).

56.     This Petition is brought within three years after the award was made.

57.     None of the grounds available for refusal or deferral of recognition and enforcement of an award specified in the New York Convention applies to the Second Partial Final Award. Therefore, Pearl respectfully requests that the Second Partial Final Award should be confirmed pursuant to 9 U.S.C. § 207 and that judgment be entered in the amount of US $1,963,370,320 as awarded by the arbitral tribunal, less any amounts that Pearl has received in satisfaction of the award as of the date of the judgment.

## Second Claim for Relief
### (Enforcement of the Third Partial Final Award)

58.    Petitioners Pearl, Dana, and Crescent repeat and reallege each and every allegation contained in paragraphs 1 through 57 above, and incorporate them by reference.

59.    The Third Partial Final Award is governed by the New York Convention because it was rendered in the United Kingdom, another contracting party, and satisfies the requirements of Section 202 of the Federal Arbitration Act.  *See* 9 U.S.C. § 202.

60.    The Third Partial Final Award included declaratory relief and an award of damages in the amount of US $121,095,181 in favor of Pearl, as well as an award of damages in the amount of US $1,654,000 for Dana and Crescent.  In addition, in the Third Partial Final Award, the Tribunal awarded Pearl interest at LIBOR plus 2%, compounded monthly, on both the amounts that the KRG owed it under the Second and Third Partial Final Awards.  The Tribunal further awarded Dana and Crescent simple interest at LIBOR plus 2% on the $1,654,000 amount that it awarded them in the Third Partial Final Award.

61.    The Federal Arbitration Act provides that the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (emphasis added).

62.    This Petition is brought within three years after the award was made.

63.    None of the grounds available for refusal or deferral of recognition and enforcement of an award specified in the New York Convention applies to the Third Partial Final Award.  Therefore, Pearl respectfully requests that the Third Partial Final Award should be confirmed pursuant to 9 U.S.C. § 207 and that judgment be entered in its favor in the amount of US $121,095,282, plus interest at LIBOR plus 2%, compounded monthly, less any amounts that Pearl has received in satisfaction of the award as of the date of the judgment.  In addition,

Pearl respectfully requests that, as per the terms of the Third Partial Final Award, it be awarded interest at LIBOR plus 2%, compounded monthly, on the amount that it is owed by the KRG under the Second Partial Final Award.  In addition, Crescent and Dana respectfully request that the Third Partial Final Award should be confirmed pursuant to 9 U.S.C. § 207 and that judgment be entered in their favor in the amount of US $1,654,000 (plus simple interest at LIBOR plus 2%) as awarded by the Tribunal, less any amounts received by Crescent and Dana in satisfaction of the award as of the date of the judgment.

**WHEREFORE**, Petitioners respectfully request an order be made:

    (a) confirming the Second Partial Final Award and Third Partial Final Award;

    (b) entering judgment in favor of Petitioner Pearl against the Respondent in accordance with the Second Partial Final Award and Third Partial Final Award;

    (c) entering judgment in favor of Petitioners Dana and Crescent against the Respondent in accordance with the Third Partial Final Award;

    (d) granting such other further relief as the Court deems just and proper.

Respectfully submitted,

Dated:   May 12, 2017

_s/_ Howard S. Hogan

Howard S. Hogan, DC Bar No. 492002
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  11101
Telephone:      202.955.8500
Facsimile:      202.467.0539

Robert Weigel (pro hac vice pending)
Jason Myatt (pro hac vice pending)
Delyan M. Dimitrov (pro hac vice pending)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 48th Floor
New York, NY  10166-0193

Telephone:     212.351.4000
Facsimile:     212.351.4035

Cyrus Benson III (pro hac vice pending)
Gibson, Dunn & Crutcher LLP
Telephone House
2-4 Temple Avenue
London EC4Y 0HB
UK
44 207 071 4000

Attorneys for Pearl Petroleum Company
Limited, Dana Gas PJSC, Crescent Petroleum
Company, International Ltd