IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PEARL PETROLEUM COMPANY LIMITED, DANA GAS PJSC, and CRESCENT PETROLEUM COMPANY INTERNATIONAL LTD,<br><br>          Petitioners,<br><br>  v.<br><br>THE KURDISTAN REGIONAL GOVERNMENT OF IRAQ,<br><br>          Respondent. | Civil Action No. 1:17-cv-00894 |

## NOTICE OF SUIT

TO:    THE KURDISTAN REGIONAL GOVERNMENT OF IRAQ
         c/o Minister of Foreign Affairs of the Republic of Iraq
         Ministry of Foreign Affairs of the Republic of Iraq
         Baghdad 220, Iraq

1. Title of legal proceeding; full name of court; case or docket number.

   *Pearl Petroleum Company Limited et al v. Kurdistan Regional Government of Iraq*, United States District Court for the District of Columbia, No. 17-c-00894

2. Name of foreign state (or political subdivision) concerned:

   The Kurdistan Regional Government of Iraq

3. Identity of the other Parties:

   Petitioners: Pearl Petroleum Company Limited, Dana Gas PJSC, and Crescent Petroleum Company International Ltd

4. Nature of documents served:

   Summons and Petition

5. Nature and purpose of the proceedings; why the foreign state (or political subdivision) has been named; relief requested:

   Petitioners Pearl Petroleum Company Limited ("Pearl"), Dana Gas PJSC ("Dana"), and Crescent Petroleum Company International Ltd ("Crescent") have filed this proceeding to (1) enforce two partial final international arbitration awards issued in London, England by the London Court of International Arbitration ("LCIA") in their favor and against The Kurdistan Regional Government of Iraq, and (2) have judgment entered on the relief granted in the arbitration awards.

   More specifically, Petitioner Pearl seeks to

   - confirm the LCIA Second Partial Final Award dated November 27, 2015, as corrected by the LCIA tribunal in a January 20, 2016 Memorandum of Correction, and have judgment entered on this arbitration award in the amount of US $1,963,370,320, plus interest at LIBOR plus 2%, compounded monthly, less any amounts received by Pearl in satisfaction of the award as of the date of the judgment;

   - confirm the LCIA Third Partial Final Award dated January 30, 2017, as corrected by the LCIA tribunal in an April 4, 2017 Memorandum of Correction, and have judgment entered on this award in the amount of US $121,095,282, plus interest at LIBOR plus 2%, compounded monthly, less any amounts received by Pearl in satisfaction of the award as of the date of the judgment.

   Petitioners Dana and Crescent seek to

   - confirm the LCIA Third Partial Final Award dated January 30, 2017, as corrected by the LCIA tribunal in an April 4, 2017 Memorandum of Correction, and have judgment entered on this award in the amount of US $1,654,000, plus simple interest at LIBOR plus 2% less any amounts received by Dana and Crescent in satisfaction of the award as of the date of the judgment.

6. Date of default judgment (if any):

   Not applicable. None entered.

7. A response to the Petition is required to be submitted to the court, not later than 60 days after these documents are received. The response may present jurisdictional defenses (including defenses relating to state immunity).

8. The failure to submit a timely response with the court can result in a Default Judgment and a request for execution to satisfy the judgment. If a default judgment has been entered, a procedure may be available to vacate or open that judgment.

9. Questions relating to state immunities and to the jurisdiction of United States courts over foreign states are governed by the Foreign Sovereign Immunities Act of 1976, which appears in sections 1330, 1391(f), 1441(d), and 1602 through 1611, of Title 28, United States Code (Pub.L. 94–583; 90 Stat. 2891), attached hereto as **Exhibit A**.

Dated: May 23, 2017

Respectfully submitted,

*s/* Howard S. Hogan
Howard S. Hogan, DC Bar No. 492002
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  11101
Telephone:   202.955.8500
Facsimile:    202.467.0539
Email:          hhogan@gibsondunn.com

*Counsel for the Petitioners Pearl Petroleum Company Limited, Dana Gas PJSC, and Crescent Petroleum Company International Ltd*

# Exhibit A

Foreign Sovereign Immunities Act of 1976

United States Code, Title 28

**§ 1330. Actions against foreign states**

**(a)** The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

**(b)** Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

**(c)** For purposes of subsection (b), an appearance by a foreign state does not confer personal jurisdiction with respect to any claim for relief not arising out of any transaction or occurrence enumerated in sections 1605-1607 of this title.

**§ 1391. Venue generally**

[. . .]

**(f) Civil actions against a foreign state**--A civil action against a foreign state as defined in section 1603(a) of this title may be brought--

**(1)** in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

**(2)** in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;

**(3)** in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or

**(4)** in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

[. . .]

**§ 1441. Removal of civil actions**

[. . .]

**(d)** Actions against foreign States.--Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal the action shall be tried by the court without jury. Where removal is based upon this subsection, the time limitations of section 1446(b) of this chapter may be enlarged at any time for cause shown.

[. . .]

**§ 1602. Findings and declaration of purpose**

The Congress finds that the determination by United States courts of the claims of foreign states to immunity from the jurisdiction of such courts would serve the interests of justice and would protect the rights of both foreign states and litigants in United States courts. Under international law, states are not immune from the jurisdiction of foreign courts insofar as their commercial activities are concerned, and their commercial property may be levied upon for the satisfaction of judgments rendered against them in connection with their commercial activities. Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter.

**§ 1603. Definitions**

For purposes of this chapter--
**(a)** A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).
**(b)** An "agency or instrumentality of a foreign state" means any entity--
**(1)** which is a separate legal person, corporate or otherwise, and
**(2)** which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
**(3)** which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.
**(c)** The "United States" includes all territory and waters, continental or insular, subject to the jurisdiction of the United States.
**(d)** A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.
**(e)** A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States.

3

**§ 1604. Immunity of a foreign state from jurisdiction**

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

**§ 1605. General exceptions to the jurisdictional immunity of a foreign state**

**(a)** A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--

**(1)** in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;
**(2)** in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

**(3)** in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;

**(4)** in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue;

**(5)** not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to--

**(A)** any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

**(B)** any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights; or

**(6)** in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under

4

the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.

**(b)** A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state: *Provided*, That—

**(1)** notice of the suit is given by delivery of a copy of the summons and of the complaint to the person, or his agent, having possession of the vessel or cargo against which the maritime lien is asserted; and if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit, the service of process of arrest shall be deemed to constitute valid delivery of such notice, but the party bringing the suit shall be liable for any damages sustained by the foreign state as a result of the arrest if the party bringing the suit had actual or constructive knowledge that the vessel or cargo of a foreign state was involved; and

**(2)** notice to the foreign state of the commencement of suit as provided in section 1608 of this title is initiated within ten days either of the delivery of notice as provided in paragraph (1) of this subsection or, in the case of a party who was unaware that the vessel or cargo of a foreign state was involved, of the date such party determined the existence of the foreign state's interest.

**(c)** Whenever notice is delivered under subsection (b)(1), the suit to enforce a maritime lien shall thereafter proceed and shall be heard and determined according to the principles of law and rules of practice of suits in rem whenever it appears that, had the vessel been privately owned and possessed, a suit in rem might have been maintained. A decree against the foreign state may include costs of the suit and, if the decree is for a money judgment, interest as ordered by the court, except that the court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose. Such value shall be determined as of the time notice is served under subsection (b)(1). Decrees shall be subject to appeal and revision as provided in other cases of admiralty and maritime jurisdiction. Nothing shall preclude the plaintiff in any proper case from seeking relief in personam in the same action brought to enforce a maritime lien as provided in this section.

**(d)** A foreign state shall not be immune from the jurisdiction of the courts of the United States in any action brought to foreclose a preferred mortgage, as defined in section 31301 of title 46. Such action shall be brought, heard, and determined in accordance with the provisions of chapter 313 of title 46 and in accordance with the principles of law and rules of practice of suits in rem, whenever it appears that had the vessel been privately owned and possessed a suit in rem might have been maintained.

**(e), (f)** Repealed. Pub.L. 110-181, Div. A, Title X, § 1083(b)(1)(B), Jan. 28, 2008, 122 Stat. 341

**(g) Limitation on discovery.—**

**(1) In general.**--**(A)** Subject to paragraph (2), if an action is filed that would otherwise be barred by section 1604, but for section 1605A or section 1605B, the court, upon request of the Attorney General, shall stay any request, demand, or order for discovery on the United States that the Attorney General certifies would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action, until such time as the Attorney General advises the court that such request, demand, or order will no longer so interfere.

**(B)** A stay under this paragraph shall be in effect during the 12-month period beginning on the date on which the court issues the order to stay discovery. The court shall renew the order to stay discovery for additional 12-month periods upon motion by the United States if the Attorney General certifies that discovery would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action.

**(2) Sunset.**--**(A)** Subject to subparagraph (B), no stay shall be granted or continued in effect under paragraph (1) after the date that is 10 years after the date on which the incident that gave rise to the cause of action occurred.

**(B)** After the period referred to in subparagraph (A), the court, upon request of the Attorney General, may stay any request, demand, or order for discovery on the United States that the court finds a substantial likelihood would—

**(i)** create a serious threat of death or serious bodily injury to any person;
**(ii)** adversely affect the ability of the United States to work in cooperation with foreign and international law enforcement agencies in investigating violations of United States law; or
**(iii)** obstruct the criminal case related to the incident that gave rise to the cause of action or undermine the potential for a conviction in such case.

**(3) Evaluation of evidence.**--The court's evaluation of any request for a stay under this subsection filed by the Attorney General shall be conducted ex parte and in camera.

**(4) Bar on motions to dismiss.**--A stay of discovery under this subsection shall constitute a bar to the granting of a motion to dismiss under rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure.

**(5) Construction.**--Nothing in this subsection shall prevent the United States from seeking protective orders or asserting privileges ordinarily available to the United States.

**(h) Jurisdictional immunity for certain art exhibition activities.—**

**(1) In general.**--If—

6

**(A)** a work is imported into the United States from any foreign state pursuant to an agreement that provides for the temporary exhibition or display of such work entered into between a foreign state that is the owner or custodian of such work and the United States or one or more cultural or educational institutions within the United States;

**(B)** the President, or the President's designee, has determined, in accordance with subsection (a) of Public Law 89-259 (22 U.S.C. 2459(a)), that such work is of cultural significance and the temporary exhibition or display of such work is in the national interest; and

**(C)** the notice thereof has been published in accordance with subsection (a) of Public Law 89-259 (22 U.S.C. 2459(a)),

any activity in the United States of such foreign state, or of any carrier, that is associated with the temporary exhibition or display of such work shall not be considered to be commercial activity by such foreign state for purposes of subsection (a)(3).

**(2) Exceptions.**--
**(A) Nazi-era claims.**--Paragraph (1) shall not apply in any case asserting jurisdiction under subsection (a)(3) in which rights in property taken in violation of international law are in issue within the meaning of that subsection and--
**(i)** the property at issue is the work described in paragraph (1);
**(ii)** the action is based upon a claim that such work was taken in connection with the acts of a covered government during the covered period;
**(iii)** the court determines that the activity associated with the exhibition or display is commercial activity, as that term is defined in section 1603(d); and
**(iv)** a determination under clause (iii) is necessary for the court to exercise jurisdiction over the foreign state under subsection (a)(3).

**(B) Other culturally significant works.**--In addition to cases exempted under subparagraph (A), paragraph (1) shall not apply in any case asserting jurisdiction under subsection (a)(3) in which rights in property taken in violation of international law are in issue within the meaning of that subsection and--
**(i)** the property at issue is the work described in paragraph (1);
**(ii)** the action is based upon a claim that such work was taken in connection with the acts of a foreign government as part of a systematic campaign of coercive confiscation or misappropriation of works from members of a targeted and vulnerable group;
**(iii)** the taking occurred after 1900;
**(iv)** the court determines that the activity associated with the exhibition or display is commercial activity, as that term is defined in section 1603(d); and
**(v)** a determination under clause (iv) is necessary for the court to exercise jurisdiction over the foreign state under subsection (a)(3).

**(3) Definitions.**--For purposes of this subsection--
**(A)** the term "work" means a work of art or other object of cultural significance;
**(B)** the term "covered government" means--
**(i)** the Government of Germany during the covered period;

**(ii)** any government in any area in Europe that was occupied by the military forces of the Government of Germany during the covered period;
**(iii)** any government in Europe that was established with the assistance or cooperation of the Government of Germany during the covered period; and
**(iv)** any government in Europe that was an ally of the Government of Germany during the covered period; and
**(C)** the term "covered period" means the period beginning on January 30, 1933, and ending on May 8, 1945.

### § 1605A. Terrorism exception to the jurisdictional immunity of a foreign state

**(a) In general.**--
**(1) No immunity.**--A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.
**(2) Claim heard.**--The court shall hear a claim under this section if--
**(A)(i)(I)** the foreign state was designated as a state sponsor of terrorism at the time the act described in paragraph (1) occurred, or was so designated as a result of such act, and, subject to subclause (II), either remains so designated when the claim is filed under this section or was so designated within the 6-month period before the claim is filed under this section; or
**(II)** in the case of an action that is refiled under this section by reason of section 1083(c)(2)(A) of the National Defense Authorization Act for Fiscal Year 2008 or is filed under this section by reason of section 1083(c)(3) of that Act, the foreign state was designated as a state sponsor of terrorism when the original action or the related action under section 1605(a)(7) (as in effect before the enactment of this section) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208) was filed;
**(ii)** the claimant or the victim was, at the time the act described in paragraph (1) occurred--
**(I)** a national of the United States;
**(II)** a member of the armed forces; or
**(III)** otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment; and
**(iii)** in a case in which the act occurred in the foreign state against which the claim has been brought, the claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with the accepted international rules of arbitration; or
**(B)** the act described in paragraph (1) is related to Case Number 1:00CV03110 (EGS) in the United States District Court for the District of Columbia.
**(b) Limitations.**--An action may be brought or maintained under this section if the action is commenced, or a related action was commenced under section 1605(a)(7) (before the date of the enactment of this section) or section 589 of the Foreign Operations, Export Financing, and

8

Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208) not later than the latter of--
**(1)** 10 years after April 24, 1996; or
**(2)** 10 years after the date on which the cause of action arose.
**(c) Private right of action.**--A foreign state that is or was a state sponsor of terrorism as described in subsection (a)(2)(A)(i), and any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, shall be liable to--
**(1)** a national of the United States,
**(2)** a member of the armed forces,
**(3)** an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment, or
**(4)** the legal representative of a person described in paragraph (1), (2), or (3),

for personal injury or death caused by acts described in subsection (a) (1) of that foreign state, or of an official, employee, or agent of that foreign state, for which the courts of the United States may maintain jurisdiction under this section for money damages. In any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages. In any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents.
**(d) Additional damages.**--After an action has been brought under subsection (c), actions may also be brought for reasonably foreseeable property loss, whether insured or uninsured, third party liability, and loss claims under life and property insurance policies, by reason of the same acts on which the action under subsection (c) is based.
**(e) Special masters.**--
**(1) In general.**--The courts of the United States may appoint special masters to hear damage claims brought under this section.
**(2) Transfer of funds.**--The Attorney General shall transfer, from funds available for the program under section 1404C of the Victims of Crime Act of 1984 (42 U.S.C. 10603c), to the Administrator of the United States district court in which any case is pending which has been brought or maintained under this section such funds as may be required to cover the costs of special masters appointed under paragraph (1). Any amount paid in compensation to any such special master shall constitute an item of court costs.
**(f) Appeal.**--In an action brought under this section, appeals from orders not conclusively ending the litigation may only be taken pursuant to section 1292(b) of this title.
**(g) Property disposition.**--
**(1) In general.**--In every action filed in a United States district court in which jurisdiction is alleged under this section, the filing of a notice of pending action pursuant to this section, to which is attached a copy of the complaint filed in the action, shall have the effect of establishing a lien of lis pendens upon any real property or tangible personal property that is--
**(A)** subject to attachment in aid of execution, or execution, under section 1610;
**(B)** located within that judicial district; and
**(C)** titled in the name of any defendant, or titled in the name of any entity controlled by any defendant if such notice contains a statement listing such controlled entity.
**(2) Notice.**--A notice of pending action pursuant to this section shall be filed by the clerk of the district court in the same manner as any pending action and shall be indexed by listing as defendants all named defendants and all entities listed as controlled by any defendant.

**(3) Enforceability.**--Liens established by reason of this subsection shall be enforceable as provided in chapter 111 of this title.
**(h) Definitions.**--For purposes of this section--
**(1)** the term "aircraft sabotage" has the meaning given that term in Article 1 of the Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation;
**(2)** the term "hostage taking" has the meaning given that term in Article 1 of the International Convention Against the Taking of Hostages;
**(3)** the term "material support or resources" has the meaning given that term in section 2339A of title 18;
**(4)** the term "armed forces" has the meaning given that term in section 101 of title 10;
**(5)** the term "national of the United States" has the meaning given that term in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22));
**(6)** the term "state sponsor of terrorism" means a country the government of which the Secretary of State has determined, for purposes of section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)), section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371), section 40 of the Arms Export Control Act (22 U.S.C. 2780), or any other provision of law, is a government that has repeatedly provided support for acts of international terrorism; and
**(7)** the terms "torture" and "extrajudicial killing" have the meaning given those terms in section 3 of the Torture Victim Protection Act of 1991 (28 U.S.C. 1350 note).

**§ 1605B. Responsibility of foreign states for international terrorism against the United States**

**(a) Definition.**--In this section, the term "international terrorism"--
**(1)** has the meaning given the term in section 2331 of title 18, United States Code; and
**(2)** does not include any act of war (as defined in that section).
**(b) Responsibility of foreign states.**--A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which money damages are sought against a foreign state for physical injury to person or property or death occurring in the United States and caused by--
**(1)** an act of international terrorism in the United States; and
**(2)** a tortious act or acts of the foreign state, or of any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, regardless where the tortious act or acts of the foreign state occurred.
**(c) Claims by nationals of the United States.**--Notwithstanding section 2337(2) of title 18, a national of the United States may bring a claim against a foreign state in accordance with section 2333 of that title if the foreign state would not be immune under subsection (b).
**(d) Rule of construction.**--A foreign state shall not be subject to the jurisdiction of the courts of the United States under subsection (b) on the basis of an omission or a tortious act or acts that constitute mere negligence.

**§ 1606. Extent of liability**

As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages; if, however, in any case wherein death was caused, the law of the place where the action or omission occurred provides, or has been construed to provide, for damages only punitive in nature, the foreign state shall be liable for actual or compensatory damages measured by the pecuniary injuries resulting from such death which were incurred by the persons for whose benefit the action was brought.

**§ 1607. Counterclaims**

In any action brought by a foreign state, or in which a foreign state intervenes, in a court of the United States or of a State, the foreign state shall not be accorded immunity with respect to any counterclaim--
**(a)** for which a foreign state would not be entitled to immunity under section 1605 or 1605A of this chapter had such claim been brought in a separate action against the foreign state; or
**(b)** arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state; or
**(c)** to the extent that the counterclaim does not seek relief exceeding in amount or differing in kind from that sought by the foreign state

**§ 1608. Service; time to answer; default**

**(a)** Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:
**(1)** by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
**(2)** if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
**(3)** if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
**(4)** if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services--and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.
**(b)** Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:
**(1)** by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or
**(2)** if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or
**(3)** if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state--
**(A)** as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or
**(B)** by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or
**(C)** as directed by order of the court consistent with the law of the place where service is to be made.
**(c)** Service shall be deemed to have been made--
**(1)** in the case of service under subsection (a)(4), as of the date of transmittal indicated in the certified copy of the diplomatic note; and
**(2)** in any other case under this section, as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed.
**(d)** In any action brought in a court of the United States or of a State, a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section.
**(e)** No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

### § 1609. Immunity from attachment and execution of property of a foreign state

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

**§ 1610. Exceptions to the immunity from attachment or execution**

**(a)** The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if--
**(1)** the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, or
**(2)** the property is or was used for the commercial activity upon which the claim is based, or
**(3)** the execution relates to a judgment establishing rights in property which has been taken in violation of international law or which has been exchanged for property taken in violation of international law, or
**(4)** the execution relates to a judgment establishing rights in property--
**(A)** which is acquired by succession or gift, or
**(B)** which is immovable and situated in the United States: *Provided*, That such property is not used for purposes of maintaining a diplomatic or consular mission or the residence of the Chief of such mission, or
**(5)** the property consists of any contractual obligation or any proceeds from such a contractual obligation to indemnify or hold harmless the foreign state or its employees under a policy of automobile or other liability or casualty insurance covering the claim which merged into the judgment, or
**(6)** the judgment is based on an order confirming an arbitral award rendered against the foreign state, provided that attachment in aid of execution, or execution, would not be inconsistent with any provision in the arbitral agreement, or
**(7)** the judgment relates to a claim for which the foreign state is not immune under section 1605A or section 1605(a)(7) (as such section was in effect on January 27, 2008), regardless of whether the property is or was involved with the act upon which the claim is based.
**(b)** In addition to subsection (a), any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if--
**(1)** the agency or instrumentality has waived its immunity from attachment in aid of execution or from execution either explicitly or implicitly, notwithstanding any withdrawal of the waiver the agency or instrumentality may purport to effect except in accordance with the terms of the waiver, or
**(2)** the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605(a) (2), (3), or (5) or 1605(b) of this chapter, regardless of whether the property is or was involved in the act upon which the claim is based, or
**(3)** the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605A of this chapter or section 1605(a)(7) of this chapter (as such section was in effect on January 27, 2008), regardless of whether the property is or was involved in the act upon which the claim is based.
**(c)** No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that

a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.
**(d)** The property of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment prior to the entry of judgment in any action brought in a court of the United States or of a State, or prior to the elapse of the period of time provided in subsection (c) of this section, if--
**(1)** the foreign state has explicitly waived its immunity from attachment prior to judgment, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, and
**(2)** the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction.
**(e)** The vessels of a foreign state shall not be immune from arrest in rem, interlocutory sale, and execution in actions brought to foreclose a preferred mortgage as provided in section 1605(d).
**(f)(1)(A)** Notwithstanding any other provision of law, including but not limited to section 208(f) of the Foreign Missions Act (22 U.S.C. 4308(f)), and except as provided in subparagraph (B), any property with respect to which financial transactions are prohibited or regulated pursuant to section 5(b) of the Trading with the Enemy Act (50 U.S.C. App. 5(b)), section 620(a) of the Foreign Assistance Act of 1961 (22 U.S.C. 2370(a)), sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701-1702), or any other proclamation, order, regulation, or license issued pursuant thereto, shall be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state (including any agency or instrumentality or such state) claiming such property is not immune under section 1605(a)(7) (as in effect before the enactment of section 1605A) or section 1605A.
**(B)** Subparagraph (A) shall not apply if, at the time the property is expropriated or seized by the foreign state, the property has been held in title by a natural person or, if held in trust, has been held for the benefit of a natural person or persons.
**(2)(A)** At the request of any party in whose favor a judgment has been issued with respect to a claim for which the foreign state is not immune under section 1605(a)(7) (as in effect before the enactment of section 1605A) or section 1605A, the Secretary of the Treasury and the Secretary of State should make every effort to fully, promptly, and effectively assist any judgment creditor or any court that has issued any such judgment in identifying, locating, and executing against the property of that foreign state or any agency or instrumentality of such state.
**(B)** In providing such assistance, the Secretaries--
**(i)** may provide such information to the court under seal; and
**(ii)** should make every effort to provide the information in a manner sufficient to allow the court to direct the United States Marshall's office to promptly and effectively execute against that property.
**(3) Waiver.**--The President may waive any provision of paragraph (1) in the interest of national security.
**(g) Property in certain actions.**--
**(1) In general.**--Subject to paragraph (3), the property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of--
**(A)** the level of economic control over the property by the government of the foreign state;

**(B)** whether the profits of the property go to that government;
**(C)** the degree to which officials of that government manage the property or otherwise control its daily affairs;
**(D)** whether that government is the sole beneficiary in interest of the property; or
**(E)** whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.
**(2) United States sovereign immunity inapplicable.**--Any property of a foreign state, or agency or instrumentality of a foreign state, to which paragraph (1) applies shall not be immune from attachment in aid of execution, or execution, upon a judgment entered under section 1605A because the property is regulated by the United States Government by reason of action taken against that foreign state under the Trading With the Enemy Act or the International Emergency Economic Powers Act.
**(3) Third-party joint property holders.**--Nothing in this subsection shall be construed to supersede the authority of a court to prevent appropriately the impairment of an interest held by a person who is not liable in the action giving rise to a judgment in property subject to attachment in aid of execution, or execution, upon such judgment.

### § 1611. Certain types of property immune from execution

**(a)** Notwithstanding the provisions of section 1610 of this chapter, the property of those organizations designated by the President as being entitled to enjoy the privileges, exemptions, and immunities provided by the International Organizations Immunities Act shall not be subject to attachment or any other judicial process impeding the disbursement of funds to, or on the order of, a foreign state as the result of an action brought in the courts of the United States or of the States.
**(b)** Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be immune from attachment and from execution, if--
**(1)** the property is that of a foreign central bank or monetary authority held for its own account, unless such bank or authority, or its parent foreign government, has explicitly waived its immunity from attachment in aid of execution, or from execution, notwithstanding any withdrawal of the waiver which the bank, authority or government may purport to effect except in accordance with the terms of the waiver; or
**(2)** the property is, or is intended to be, used in connection with a military activity and
**(A)** is of a military character, or
**(B)** is under the control of a military authority or defense agency.
**(c)** Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be immune from attachment and from execution in an action brought under section 302 of the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996 to the extent that the property is a facility or installation used by an accredited diplomatic mission for official purposes.